■ WELFORD REALTY, INC., et al., Respondents, v SAMUEL BRAUSE et al., Appellants. — Order, Supreme Court, New York County (Kleiman, J.), entered December 23, 1982, denying defendants' motion for summary judgment, unanimously reversed, on the law, the motion is granted and the complaint dismissed, with costs. In 1981 defendant Indian Realty Company (Indian) was a partnership, consisting of the two individual defendants Samuel Brause and Milton Brause, as well as Norman F. Levy. Indian owned a building located at 211 West 61st Street, Manhattan, which plaintiff Welford Realty, Inc. (Welford), and plaintiff Abraham Hirschfeld (Hirschfeld) were interested in acquiring. Both plaintiffs and defendants were experts in the buying and selling of large parcels of real estate for investment purposes. As a result of very tough negotiations, on March 24, 1981, a sale agreement was signed. In order to induce defendants to sign, Hirschfeld gave his personal guarantee of Welford's

---

performance. The agreement provided that the selling defendants, at their option, were to receive "either other real property acceptable to the seller ('exchange property'), or (ii) * * * $4,500,000 * * * ('purchase price'), or (iii) a combination of exchange property and cash". Even though this agreement fixed the closing date as June 29, 1981, the defendants had the option, by designating an exchange property prior to the date of closing, to delay the closing for as much as 90 days, while plaintiffs undertook to obtain title to that property. Throughout their dealings with plaintiffs, the defendants emphasized that they preferred to sell the property on the basis of a tax-free exchange of real property instead of for cash. Also, pursuant to the agreement's terms, plaintiffs placed in escrow $450,000 as a down payment, which would be forfeited to defendants as liquidated damages, if plaintiffs breached the sale agreement. Thereafter, on April 3, 1981, Welford entered into a written agreement to assign their contract to purchase the subject premises to L. E. Jung & Wolff, Inc. (Jung), for $5,200,000; but, Jung was only obligated to purchase if Welford obtained the premises for cash, and the premises were vacant of tenants, no later than December 31, 1981. After plaintiffs' agreement with Jung, the plaintiffs endeavored to convince defendants to change the terms of the sale agreement and to accelerate the closing date. In response, defendants advised plaintiffs that, since they had several prospects for a property exchange, they expected to exercise their option to adjourn the closing date, unless plaintiffs entered into additional agreements that would insure that defendants lost no benefits they enjoyed under the sale agreement. These additional agreements were negotiated, plaintiffs and defendants signed them, and the closing date was advanced to June 25, 1981. However, this June 25 closing was aborted when plaintiffs objected to making an $8,000 rent adjustment payment. Subsequently, this dispute was compromised. Then the parties closed on August 3, 1981. Later plaintiffs sold the premises to Jung for $4,500,000. In this instant action, the plaintiffs are suing the defendants to recover the $700,000 they lost in profit because they reduced their selling price to Jung. They assert that, in order to close with defendants, the plaintiffs had to agree, under duress, to certain additional demands of defendants, not contained in the original sale agreement, or else they would have lost their down payment. Further, plaintiffs claim that their agreement to defendants' demands resulted in the lower price that Jung paid. After issue was joined and discovery had taken place, defendants moved for summary judgment to dismiss the plaintiffs' complaint. Special Term denied the motion holding that: (1) the affirmation of attorney Albert H. Brodkin (Brodkin) was insufficient; and (2) there were triable issues of fact. We disagree. Our review of this record leads us to conclude that the motion should have been granted. Here we have arm's length dealings between very experienced real estate operators. The plaintiffs would have this court label the hard bargaining that took place as duress. For duress to void what was done, it "must have involved a wrongful act or threat precluding the exercise of a free will." (17 NY Jur, Duress and Undue Influence, §§ 3, 4.) Brodkin's affirmation sets forth personal knowledge of the facts, in that Brodkin, himself, negotiated on behalf of defendants every key agreement with plaintiffs concerning the sale of this property. His affirmation, which contends that there was no duress, is supported by documentary evidence. In opposition, the plaintiff relies upon the affidavit of Hirschfeld, who revealed in his examination before trial that he had slight knowledge of the facts. We hold that "[t]he only reasonable inference that can be drawn [from the respective papers submitted in behalf of and in opposition to the motion] is that the plaintiff is unable to prevail" (*Muller Constr. Co. v New*

*York Tel. Co.,* 40 NY2d 955, 956). There is no triable issue of fact. (*Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338, 343.) Concur — Sullivan, J. P., Ross, Asch and Alexander, JJ.